UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SENORINA G.,[1] | Case No. 5:18-cv-00534-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Senorina G. ("Plaintiff") filed a Complaint on March 15, 2018, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On December 21, 2018, the parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## BACKGROUND

Plaintiff filed an application for DIB on May 22, 2014 and an application for SSI on May 30, 2014, both alleging disability commencing on November 23, 2013. Administrative Record ("AR") 185-92, 193-213. After her applications were denied initially and on reconsideration (AR 116-21, 125-31), Plaintiff requested an administrative hearing (AR 132-134), which was held on December 12, 2016. AR 31-59. Plaintiff, represented by an attorney, appeared and testified before an Administrative Law Judge ("ALJ").

On March 27, 2017, the ALJ issued a written decision finding Plaintiff was not disabled. AR 31-59. The ALJ found Plaintiff had not engaged in substantial gainful employment since November 23, 2013 and suffered from the severe impairments of lumbar stenosis and depression. AR 17. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 17. The ALJ also found Plaintiff had the residual functional capacity ("RFC") to perform the demands of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except:

> [Plaintiff] can lift/carry 20 pounds occasionally, and 10 pounds frequently, can sit for 6 hours in an 8-hour workday and can stand/walk for 6 hours in an 8-hour workday with normal breaks. [Plaintiff] can perform all postural maneuvers frequently, and cannot work around unprotected heights or dangerous moving machinery. [Plaintiff] is capable of understanding, remembering, and carrying out simple, non-complex work with few variables. [Plaintiff] can make decisions with occasional changes. [Plaintiff] is limited to occasional interaction with supervisors or co-workers, but cannot work on projects.

AR 19.

The ALJ determined Plaintiff could not perform her past relevant work as a retail sales clerk, caretaker, or bakery worker. AR 23. However, the ALJ determined Plaintiff could perform other jobs existing in significant numbers in the national economy. AR 24. Considering Plaintiff's age, education, work experience, and RFC, and the Vocational Expert's ("VE") testimony, the ALJ concluded Plaintiff could perform the jobs of a marking clerk, hand packager, and systems surveillance monitor. AR 24. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. AR 25.

On February 7, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. This action followed.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or

reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he is disabled, or he meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present four disputed issues (Jt. Stip. at 3):

Issue No. 1: Whether the ALJ properly concluded that Plaintiff's upper extremity impairments are non-severe;

Issue No. 2: Whether the ALJ properly considered the treating physician's opinion;

5

Issue No. 3: Whether the ALJ conducted a proper residual functional capacity assessment; and

Issue No. 4: Whether the ALJ properly considered the Third-Party Function Report.

## A. **Non-Severity of Upper Extremity Impairments**

Plaintiff argues the ALJ erred in finding Plaintiff's arm and hand impairments were not severe at Step Two. The Court finds the ALJ did not commit reversible error in his non-severity determination with respect to Plaintiff's upper extremities.

### 1. Applicable Law

At Step Two of the sequential evaluation process, the claimant has the burden to show that he or she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least twelve months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at Step Two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); accord § 416.921(a). "An impairment or combination of impairments may be found not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.").

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal citation omitted).

Thus, applying the applicable standard of review to the requirements of Step Two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. at 688 (requiring analysis beyond Step Two where there was not a "total absence of objective evidence" of a severe impairment).

2. <u>Analysis</u>

Although the ALJ did find other impairments severe, he did not find Plaintiff's upper extremity impairments were severe and did not explain that finding in his decision. AR 17. Plaintiff argues the records reflect that Plaintiff "has consistently been diagnosed with carpal tunnel syndrome, cervical radiculopathy and neuropathy, arm weakness, and left arm numbness." Jt. Stip. at 4. Plaintiff further asserts that a nerve conduction study revealed "'[r]ight ulnar neuropathy at Guyton's tunnel'" and "bilateral '[p]atchy motor neuropathies,'" and a separate "electromyogram found 'chronic denervation . . . involving C5 and C6 on the right side.'" Jt. Stip. at 3-4 (citing AR 628, 652, 656, 657, 663, 668, 690, 694, 712,713, 736, 739, 748, and  802). Plaintiff then asserts: "These impairments would clearly have more than a minimal effect on her ability to perform basic work activities" (Jt. Stip. at 4), but cites nothing in the record to support that conclusion.

As noted, an impairment is not severe if it does not significantly limit Plaintiff's ability to work. Although the Step Two inquiry is a de minimis screening device and Plaintiff need only show the impairment is more than a slight abnormality having more than a minimal effect on her ability to work (<u>Webb</u>, 433 F.3d at 686), a mere diagnosis of an impairment is not enough to establish disability. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990). As the Commissioner notes (Jt. Stip. at 5), multiple examinations during the relevant time period reflect no findings of any issues with respect to Plaintiff's

7

arms (see AR 446, 631, 748), and another reflects Plaintiff had "5/5" in muscle strength in both arms (AR 793). Further the studies referenced by Plaintiff, while referencing certain diagnoses, also report "normal" or "largely normal" findings, and do not reflect medical conclusions regarding work-related limitations. See AR 6656-61, 760-61.

Although, as noted above, the medical records are not consistent, at best, Plaintiff has identified certain diagnoses, Plaintiff has not identified any evidence showing that the diagnoses had any work-related effect. Absent such evidence, the asserted limitations did not meet the definition of severe. Thus, the Court finds that the ALJ "had substantial evidence to find that the medical evidence clearly established that" Plaintiff's asserted shoulder, arm, and hand impairments were not severe. Webb, 433 F.3d at 687; see also Lee v. Berryhill, 2018 WL 1626083, at *3 (C.D. Cal. Mar. 30, 2018) (finding ALJ did not err and substantial evidence supported his implicit determination at Step Two that plaintiff's carpal tunnel syndrome was non-severe).

Further, even if the ALJ erred in finding Plaintiff's upper extremity impairments were not severe without making findings, the Court finds that any such error was harmless as the ALJ discussed Plaintiff's upper extremity complaints and medical records, as well as conclusions by State agency examiners, and accounted for Plaintiff's upper extremity limitations in the RFC by, among other things, limiting her to lifting/carrying "20 pounds occasionally" and "10 pounds frequently." AR 19-21, 23. As noted, other than asserting in a conclusory fashion that the impairments "would clearly have more than a minimal effect on her ability to perform basis work activities" (Jt. Stip. at 4), Plaintiff does not point to any evidence in the record that suggests her shoulder, arm, or hand impairments caused any work-related functional limitation not accounted for in her RFC. Therefore, any asserted error was harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding

ALJ's finding of non-severity of impairment at Step Two was harmless because the ALJ accounted for any impairment-related limitations at Step Four); Lee, 2018 WL 1626083, at *4 (citing Lewis); Lowery v. Colvin, 2014 WL 183892, at *4 (D. Or. Jan. 14, 2014) ("In the Ninth Circuit, excluding a diagnosis from the list of severe impairments at Step Two is significant only if the impairment caused additional functional limitations not accounted for in the RFC assessment.") (same); see generally 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").

Accordingly, the ALJ did not commit reversible error warranting a remand at Step Two.

**B. Dr. Khin's Opinion**

Plaintiff contends the ALJ did not properly consider the opinion of treating physician, Henry Khin, M.D. ("Dr. Khin"). The Court finds that the ALJ properly discounted Dr. Khin's opinion.

1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an

9

examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

### 2. Analysis

From October 15, 2014 to September 16, 2016, Plaintiff had several appointments with Dr. Khin. AR 584-89, 594-600, 633-45. Dr. Khin's notes indicate that Plaintiff's mood was "ok" on occasions (AR 634, 636) and that "[Plaintiff's] meds are working." AR 635. Dr. Khin also opined a Global Assessment of Functioning ("GAF")[2] score of 60. AR 589, 642.

On November 5, 2015, Dr. Khin completed a two page "check-the-box" form opinion on Plaintiff's behalf. AR 623-24. Dr. Khin opined Plaintiff would be unable to meet competitive standards in several work-related categories, including in: maintaining regular attendance and punctuality; performing at a consistent pace without an unreasonable number and length of rest periods; and handling normal work stress. Id. He further opined Plaintiff would be expected to be absent from work more than four days per month. AR 624.

The ALJ gave Dr. Khin's opinion little weight because Dr. Khin's treatment notes did not support the "extremity" of Dr. Khin's opinion. AR 22.

---

[2] The GAF scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic and Statistical Manual of Mental Disorders, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 51-60 corresponds to moderate symptoms or moderate difficulties in social, occupational, or school functioning. Id.

The ALJ also found the rest of the objective medical evidence did not support Dr. Khin's opinion. Id.

Plaintiff contends the ALJ failed to provide any specific and legitimate reasons for rejecting Dr. Khin's medical opinion regarding the limitations attributable to Plaintiff's "debilitating mental impairments" because: (1) Dr. Khin's own records are consistent with his opinion and (2) the totality of the medical record is consistent with the opinion. Jt. Stip. at 7-8. In opposition, the Commissioner argues the ALJ reasonably found that Dr. Khin's opinion was inconsistent with the overall record. Jt. Stip. at 9-12. The Court finds the ALJ properly considered the opinion of Dr. Khin.

First, the ALJ properly found Dr. Khin's own treatment notes were inconsistent with his opinion as set forth on the form. Dr. Khin's reports provide little in the way of objective findings; instead, the reports list Plaintiff's subjective description of her symptoms. AR 584-89, 594-600, 633-45. When a physician's disability opinion is inconsistent with or not supported by underlying treatment notes, an ALJ may appropriately discount such opinion. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.").

Second, the ALJ found that Dr. Khin's opinion was inconsistent with the overall record. Dr. Khin assessed multiple extreme functional limitations, but mental status examinations by various treating physicians throughout the relevant time reflected nonexistent or limited symptoms, anxiety, or apathy. See AR 387, 393, 438, 443, 452, 458, 461, 589, 689, 694, 697, 716, 720, 726, 739, 745, 757. An ALJ may properly discredit a medical opinion that is at odds with the records as a whole. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective

medical findings"); C.F.R. § 404.1527(c)(4) (the more consistent an opinion is with the evidence of record the more weight is given to that opinion).The ALJ reasonably concluded that the longitudinal record of objective findings failed to support Dr. Khin's opinion.

Accordingly, the ALJ provided legally sufficient reasons for discounting Dr. Khin's contradicted opinion.

## C. RFC Assessment

Plaintiff contends the ALJ failed to properly account for Plaintiff's "well-established" upper and lower extremity limitations in the RFC. The Court finds the ALJ did not err in assessing Plaintiff's RFC.

### 1. Applicable Law

An assessment of a claimant's RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis: eight hours a day, five days a week, or an "equivalent" work schedule. See Social Security Ruling 96-8p. An ALJ is responsible for determining a claimant's RFC, that is, for assessing the most a claimant can still do despite her limitations, including medically determinable impairments that are not severe and any related symptoms such as pain. See 20 C.F.R. §§ 404.1545, 416.945; see also Reddick, 157 F.3d at 724 ("Social Security regulations define [RFC] as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'") (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)). An ALJ assesses a claimant's RFC based on all the relevant evidence, including observations of limitations and symptoms such as pain, from medical sources, from the claimant, or from family, neighbors, friends, or others. See 20 C.F.R. §§ 404.1545, 416.945. An RFC determination by an ALJ is not a "medical opinion," but rather an "administrative finding" that is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), (2);

416.927(d)(1), (2); see also Dominguez v. Colvin, 808 F.3d 403, 409 (9th Cir. 2015), as amended (Feb. 5, 2016) (final responsibility for deciding RFC is up to the ALJ, not reviewing court) (citing 20 C.F.R. § 416.927).

2. Analysis

On April 30, 2014, Jesse Goodwin, PT, DPT assessed that Plaintiff experienced low back radiating pain associated with lumbar disc displacement. AR 339. On May 7, 2014, an MRI of Plaintiff's lumbar spine demonstrated "a small central disc protrusion at the L5, S1 level, where they may be a small fragment on the left side compressing the S1 root." AR 367. Assessments of Plaintiff on June 18, 2014 revealed radicular low back pain, and assessments on November 3, 2015 showed radiculopathy in the lumbar region. Additionally, on April 29, 2016, Plaintiff was diagnosed with radiculopathy in the lumbosacral region. AR 802.

Past MRIs of Plaintiff's lumbar spine showed an extruded disc at the L5-S1 level with impingement on the left S1 nerve root. AR 334, 446. An October 16, 2014 nerve conduction study revealed "evidence of moderate chronic S1 radiculopathy on the left" (AR 646-647), and Plaintiff's treating physicians discussed back surgery with her. AR 367, 409, 841. During several physical examinations, Plaintiff walked with an antalgic or compensated gait. AR 316, 652, 663, 667, 694, 697, 701. However, many other reports reflect no issues with Plaintiff's ability to walk. See, e.g., AR 367, 409, 733, 802, 809-10. Examinations have revealed positive straight-leg raising on Plaintiff's left side (AR 393, 789) and also indicate "no atrophy noted in any muscle groups, muscle strength is 5/5 in upper and lower extremities bilaterally, deep tendon reflexes were intact and full" and normal muscle strength. AR 303, 367, 387, 409, 529, 802, 809-10. A December 2013 lumbar x-ray revealed normal findings (AR 404), and a January 2013 nerve conduction study of Plaintiff's left leg was also normal. AR 628-29.

13

As noted, the ALJ found Plaintiff had the RFC to perform the demands of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following additional physical limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally, and 10 pounds frequently, can sit for 6 hours in an 8-hour workday and can stand/walk for 6 hours in an 8-hour workday with normal breaks. [Plaintiff] can perform all postural maneuvers frequently, and cannot work around unprotected heights or dangerous moving machinery.

AR 19.

Plaintiff argues the ALJ failed to properly consider Plaintiff's "well-established upper and lower extremity limitations" and failed to explain asserted inconsistencies between the record and the ALJ's assessment. Jt. Stip. at 13-14. The Commissioner counters that the ALJ reasonably considered all of Plaintiff's conditions when assessing her RFC, and diagnostic tests, along with physical examinations, support the ALJ's RFC findings. Jt. Stip. at 14-16.

The Court finds the ALJ properly accounted for Plaintiff's upper and lower extremity limitations in the RFC. First, as discussed above, substantial medical evidence in the record supports the ALJ's implicit determination at Step Two that Plaintiff's upper extremity impairments were not a severe impairment. Moreover, the ALJ accounted for Plaintiff's upper extremity use in the RFC by specifically limiting her to lifting/carrying "20 pounds occasionally" and "10 pounds frequently." AR 19.

Second, substantial evidence supports the ALJ's RFC findings regarding Plaintiff's lower extremity limitations. The ALJ accounted for Plaintiff's lower extremity impairments in the RFC by limiting Plaintiff to: (1) sitting for 6 hours in an 8-hour workday and (2) standing/walking for 6 hours in an 8-hour workday with normal breaks. AR 19. The record also contains several

diagnostic studies that support the ALJ's RFC findings. For example, a December 2013 lumbar x-ray revealed normal findings (AR 404), and a January 2013 nerve conduction study of Plaintiff's left leg was also normal. AR 628-29. An October 2014 nerve conduction study indicated moderate nerve irritation on Plaintiff's lower extremity. AR 646-49.

Similarly, the results of Plaintiff's physical examinations are also in accord with the ALJ's RFC determination. For example, many reports reflect no issues with walking. See, e.g., AR 367, 409, 733, 802, 809-10. Further, reports reflect "no atrophy noted in any muscle groups, muscle strength is 5/5 in upper and lower extremities bilaterally, deep tendon reflexes were intact and full" and normal muscle strength. See, e.g., AR 303, 367, 387, 409, 529, 802, 809-10. Similarly, the State agency reviewing physicians both opined Plaintiff could perform light work. AR 80, 110.

The ALJ provided a detailed review of the medical evidence, including the opinions of the State agency reviewing physicians, examining physicians, and treating physicians, among other things, in formulating Plaintiff's RFC. AR 19-23. The RFC determination is an "administrative finding" specifically reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2); Dominguez, 808 F.3d at 409; Lynch Guzman v. Astrue, 365 F. App'x 869, 870 (9th Cir. 2010); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine [RFC]."). The ALJ did not err in assessing Plaintiff's RFC.

### D. Third-Party Function Report

Plaintiff argues that the ALJ failed to cite germane reasons for rejecting a third-party function report prepared by Plaintiff's mother, Diane Gabriel ("Ms. Gabriel"). The Court finds, although the ALJ provided three non-germane reasons, he did provide one germane reason for rejecting the third-party report.

15

1. <u>Applicable Law</u>

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006)); <u>see also</u> 20 C.F.R. § 416.913(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). Such testimony "cannot be disregarded without comment." <u>Bruce</u>, 557 F.3d at 1115 (quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)); <u>Robbins</u>, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting law witness testimony, an ALJ must give specific reasons germane for discounting the testimony. <u>Valentine</u>, 574 F.3d at 694.

2. <u>Analysis</u>

On August 5, 2014, Ms. Gabriel completed a third-party function report that reported Plaintiff had significant difficulty with standing, walking, sitting, and lifting. AR 241, 243, 246. Ms. Gabriel further noted that Plaintiff required assistance with personal hygiene and care, as well as in performing housework, cooking, dressing, bathing. AR 242-43. Ms. Gabriel reported that due to extremely high levels of pain, Plaintiff had difficulty sleeping at night, completing tasks, and taking care of her son. AR 242, 244.

The ALJ discounted Ms. Gabriel's observations by stating: (1) Ms. Gabriel's statements were not given under oath; (2) Mr. Gabriel was not a medical professional who was competent to make a diagnosis or argue the severity of her daughter's symptoms in relation to her ability to work; (3) Ms. Gabriel was biased because she had an emotional and financial interest in seeing that her daughter received benefits; and (4) Ms. Gabriel's opinion was not supported by the medical treatment contained within the record.

Plaintiff argues the ALJ failed to provide any germane reasons for "rejecting" Ms. Gabriel's lay observations because reasons (1) through (3) above are not germane, and as to reason (4), the medical evidence supported Ms. Gabriel's opinion. The Commissioner counters that the ALJ found that the statements by Plaintiff and Ms. Gabriel had little probative value because they were inconsistent with the record, which is a germane reason for discounting Ms. Gabriel's statements. Jt. Stip. at 19-21.

The Court finds that the ALJ's first three reasons for discounting Ms. Gabriel's opinion—statements not under oath, statements not from a medical professional, and bias—were improper, non-germane reasons. See Valenzuela v. Berryhill, 2018 WL 1524496, at *13 (S.D. Cal. Mar. 28, 2018) ("an ALJ cannot disregard a lay witness's testimony simply because it was not provided under oath by a non-medical professional"); Valentine, 574 F.3d at 694.

However, if an ALJ provides a sufficient germane reason or reasons, even when accompanied by non-germane reasons, any error in relying on non-germane reasons is harmless. Valentine, 574 F. 3d at 694. (holding although the ALJ erroneously found that the claimant's wife was "an interested party, and that she never saw him at work," the error was harmless because the other reasons cited for discounting her statements were germane and valid).

Here, the ALJ's fourth reason for discounting Ms. Gabriel's observations—inconsistency with the medical treatment in the record—is a proper, germane reason for discrediting the testimony of lay witnesses. See Duran v. Berryhill, 725 Fed. App'x 577, 578 (9th Cir. 2018) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)); James B. v. Berryhill, 2018 WL 5786218, at *10 (D. Or. Nov. 5, 2018) (finding one sufficiently germane reason is sufficient to support a rejection of lay testimony). Further, as set forth in greater detail above, the medical evidence did not support the limitations observed by Ms. Gabriel. The ALJ provided a germane reason, supported by

substantial evidence, to support his partial rejection of Ms. Gabriel's statements.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: February 19, 2019

_____
JOHN D. EARLY
United States Magistrate Judge